United States District Court
District of New Jersey

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. MICHAEL A. SHIPP |
| v. | : | **CRIMINAL COMPLAINT** |
| JOSE RAUL TORRES | : | Magistrate No. 10-6035 |

I, Michael Alerassool, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. From at least as early as January 16, 2010 through on or about January 27, 2010, in Union County in the District of New Jersey and elsewhere, defendant did:

knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute a quantity of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

SEE ATTACHMENT A

_____
Michael Alerassool
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

March 2, 2010                              at 2:40pm  Newark, New Jersey
Date                                                  City and State

_____
Signature of Judicial Officer

Honorable Michael A. Shipp
United States Magistrate Judge

## ATTACHMENT A

I, Michael Alerassool, am a Special Agent of the Federal Bureau of Investigation. Based upon my investigation and my discussions with other individuals involved in this investigation, I have knowledge of the following facts:

1. On or about January 16, 2010, a confidential informant who has proven to be reliable and credible, (hereafter "CI"), had a conversation with JOSE RAUL TORRES during which TORRES stated in sum and substance that he would sell drugs to CI.

2. On January 26, 2010, CI met with TORRES. During the meeting, TORRES agreed to sell CI 25 bricks of heroin for $5,500. Also during this meeting, TORRES threatened to kill CI if CI was cooperating with law enforcement.

3. On or about January 27, 2010, CI met with TORRES in order to conduct a narcotics transaction. TORRES took $5500 from CI, after which TORRES stated in sum and substance that TORRES and CI should hurry to TORRES' residence because the drugs would soon be delivered by another to that residence. CI and TORRES then went to TORRES' residence at 319 East Jersey Street, 2nd Floor, Elizabeth, New Jersey.

4. While at TORRES' residence, TORRES received a telephone call after which TORRES stepped outside and soon returned with a quantity of heroin. After TORRES conducted a search of CI in an effort to determine if CI was wearing a body wire, TORRES gave the heroin to CI.

5. The heroin purchased from TORRES was handed over to law enforcement. The substance field tested positive for the presence of heroin.