United States District Court
District of New Jersey

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. MICHAEL A. SHIPP |
| v. | : | **SUPERSEDING CRIMINAL COMPLAINT** |
| JOSE RAUL TORRES, and SANTIAGO MALDONADO | : | Magistrate No. 10- \6ЗЅ |

I, Michael Alerassool, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. From at least as early as January 16, 2010 through on or about March 3, 2010, in Union County in the District of New Jersey and elsewhere, defendants did:

knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute 100 grams or more of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

In violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

SEE ATTACHMENT A

_____

Michael Alerassool
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

March 4, 2010
Date

at

Newark, New Jersey
City and State

_____
Honorable Michael A. Shipp
United States Magistrate Judge

Signature of Judicial Officer

## ATTACHMENT A

I, Michael Alerassool, am a Special Agent of the Federal Bureau of Investigation (FBI). Based upon my investigation and my discussions with other individuals involved in this investigation, I have knowledge of the following facts:

1. On or about January 16, 2010, a confidential informant who has proven to be reliable and credible, (hereafter "CI-1"), had a conversation with JOSE RAUL TORRES during which TORRES stated in sum and substance that he would sell drugs to CI-1.

2. On January 26, 2010, CI-1 met with TORRES. During the meeting, TORRES agreed to sell CI-1 25 bricks of heroin for $5,500. Also during this meeting, TORRES threatened to kill CI-1 if CI-1 was cooperating with law enforcement.

3. On or about January 27, 2010, CI-1 met with TORRES in order to conduct a narcotics transaction. TORRES took $5,500 from CI-1, after which TORRES stated in sum and substance that TORRES and CI-1 should hurry to TORRES' residence because the drugs would soon be delivered by another to that residence. CI-1 and TORRES then went to TORRES' residence at 319 East Jersey Street, 2nd Floor, Elizabeth, New Jersey.

4. While at TORRES' residence, TORRES received a telephone call after which TORRES stepped outside and soon returned with a quantity of heroin. After TORRES conducted a search of CI-1 in an effort to determine if CI-1 was wearing a body wire, TORRES gave the heroin to CI-1.

5. During the time that CI-1 and TORRES were present at the residence, an individual was observed leaving 319 East Jersey Street, New Jersey, in a red Pathfinder with license plate VPA 21L, registered to an address at 136 Franklin, Elizabeth, NJ (the "Pathfinder") .

6. On March 3, 2010, a second confidential informant who has proven to be reliable and credible, (hereafter "CI-2"), and TORRES met to conduct a further narcotics transaction. While in a vehicle outside of 319 East Jersey Street, Elizabeth, CI-2 gave TORRES $13,200 for the purchase of 60 bricks of heroin. While at that location, the Pathfinder arrived. TORRES entered the Pathfinder after which the Pathfinder drove away. A short time later, the Pathfinder dropped TORRES off at 319 East Jersey Street, Elizabeth. TORRES then returned to the vehicle in which CI-2 was seated and the Pathfinder drove away.

7. Thereafter, law enforcement observed MALDONADO exit the residential building at 136 Franklin, Elizabeth, New Jersey and enter the Pathfinder. MALDONADO drove away in the Pathfinder.

8. Thereafter, MALDONADO returned and was observed entering 136 Franklin, Elizabeth. TORRES and CI-2 also arrived at 136 Franklin, Elizabeth. TORRES exited the vehicle, walked down an alleyway which accesses MALDONADO's basement apartment at 136 Franklin, Elizabeth. Thereafter, TORRES walked back through the alleyway, returned to CI-2, and gave heroin to CI-2. Soon after TORRES walked back, MALDONADO was observed walking out of the same alleyway after which he was apprehended in front of the building.

9. After the apprehension of TORRES, law enforcement recovered approximately $1000 from TORRES' person. After the apprehension of MALDONADO, law enforcement recovered an additional $1000 from MALDONADO's person. Pursuant to a consent search, law enforcement recovered an additional $1000 from atop a dresser, $300 from atop a bed and $500 in a box, all in MALDONADO's basement apartment located at 136 Franklin, Elizabeth. By comparing serial numbers of the money used to purchase the narcotics on March 3, 2010, law enforcement was able to conclude that the money recovered as described above, was the same money used to purchase the 60 bricks of heroin. (There was additional money recovered as well from the basement apartment).

10. Following his apprehension, TORRES stated in sum and substance that the heroin he sold to CI-2 on March 3, 2010, was obtained from MALDONADO.

11. On both of the above occasions, the heroin purchased by CI-1 and CI-2 was handed over to members of the FBI. The substances field tested positive for the presence of heroin and together has a net weight of 100 grams or more.